UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    Walter Joseph Regan,　　　　　　　　　　　　　Case No. 18-31694
　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
                    Debtor.

---

    Henry Hon and Michele Domres-Hon,　　　　　Adv. Pro. No. 19-50006

                    Plaintiffs,

    v.

    Walter Joseph Regan,

                    Debtor.

---

Appearances:

Edward Y. Crossmore, Esq.　　　　　　　　　　　　*for Plaintiffs*
The Crossmore Law Office
115 West Green Street
Ithaca, NY 14850

Peter Alan Orville, Esq.　　　　　　　　　　　　　*for Debtor*
Orville & McDonald Law, PC
30 Riverside Drive
Binghamton, NY 13905

**Memorandum-Decision and Order**

    Plaintiffs Henry Hon and Michele Domres-Hon object to the discharge of Defendant-Debtor Walter Regan under 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(B), (a)(4)(C), and (a)(5). Plaintiffs allege standing to bring this action as creditors who assert a $273,500.00 unsecured claim for money purportedly lent to Debtor. Debtor objects to Plaintiffs' claim and seeks dismissal of the complaint, in part on the basis that the money was a gift and, therefore, Plaintiffs lack standing to bring the instant action. The court held an evidentiary hearing on August 16, 2019, limited to the threshold issue of whether Plaintiffs are creditors with the

requisite standing to bring this adversary proceeding. Both Plaintiffs testified at the hearing as did Defendant Walter Regan.[1] Following the filing of post-trial briefs (Docs. 22, 23, 24), the matter was deemed submitted. Based upon the entire record,[2] the court makes the following findings of fact and conclusions of law, incorporated in this memorandum-decision as permitted by Fed. R. Bankr. P. 7052. For reasons that follow, the court finds that Plaintiffs are creditors who have standing to bring this action.

## Jurisdiction

The court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 1334(b), §§157(a), (b)(1) and (b)(2)(J). Plaintiffs and Debtor have consented to this court's jurisdiction to hear and enter a final order in this case.

## Factual History

Debtor and Stephanie Hon were married prior to Debtor filing bankruptcy. The couple was living in Kentucky when Stephanie Hon received a residency offer at Cornell University's College of Veterinary Medicine, prompting Debtor and Stephanie Hon to seek housing in Ithaca, New York.

---

[1] The court additionally heard testimony from Plaintiffs' witnesses, Stephanie Hon and Attorney Thomas Cramer, who represents Stephanie Hon in her pending divorce from Debtor, and Debtor's father, Patrick Regan, who testified on his son's behalf.

[2] The record also includes the following exhibits which were admitted into evidence: Plaintiffs' Bank of America Statements – Withdrawals and other Subtractions, Plaintiff's Exhibit ("P Ex.") "A", Michele Hon's Bank of America Statements – Deposits and other Additions ("P Ex. B"), ¶7 of Reply Affidavit of Walter Regan ("Reply Aff. WR") sworn to on April 19, 2017 ("P Ex. C"), Text Messages between Walter Regan and Dr. Hon, attached as Exhibit A to Reply Aff. WR ("P Ex. C-A"), pages 48 to 53 of June 24, 2019 Deposition Transcript of Walter Regan (excluding lines 7 to 10 on page 52) ("P Ex. D"), Checks dated May 4, 2016 written on closing of purchase of 51 Tiger Lily Lane, Defendant's Exhibit ("D Ex.") "1", and July 10, 2018 Tompkins County Clerk recording page and mortgage of 51 Tiger Lily Lane from Stephanie Hon to Henry and Michele Hon. ("D Ex. 2"). Additionally, the court takes judicial notice of Debtor's chapter 7 petition and schedules filed in the main case, 18-31694, Doc. 1 ("Petition" and "Schedules").

2

During the Spring of 2016, Debtor and his then father-in-law, who is a physician, exchanged numerous text messages regarding Debtor's and Stephanie Hon's search for a home in New York. (P Ex. C-A). On March 17, 2016, Dr. Hon outlined and compared three alternative scenarios Debtor and Stephanie would face if they were to either (i) rent a house, (ii) borrow money from a bank at two percent interest plus fees, or (iii) borrow money from Plaintiffs at zero percent interest. (P Ex. C-A at 3-4). In explaining the third option, Dr. Hon wrote: "If I help you with the zero interest loan then you'll have 76k in equity instead… by me helping you, I can save you [$30k] in the next 3 years, mainly interest you'll lose to the bank" (P Ex. C-A at 2 & 3). Dr. Hon and Debtor also addressed negotiation strategies to pursue with various sellers and realtors. These text messages were exchanged while Debtor resided in Kentucky and Plaintiffs resided in Florida. Debtor had applied and qualified for financing from two alternative lenders but did not pursue either. Instead, it was agreed that the funds would come from his father-in-law. Dr. Hon testified that the money came from a general Bank of America account held in his and his wife's name that they were planning on using for retirement. The first transfer of $400,000 represented seventy percent of the purchase price. The second transfer of $155,000 were monies held to be able to close on the Property. Debtor acknowledged receipt of both of these transfers. (P Ex. C-A pgs. 12 & 18). When the monies fell short, Dr. Hon transferred an additional $5,500 to complete the purchase.

The total $565,500 was transferred into a joint Navy Federal Credit Union Account held by Debtor and Stephanie. Dr. Hon testified that the purpose of the transfers was to help his daughter and son-in-law purchase their first house, located at 51 Tiger Lily Lane in Ithaca, New York ("the Property"). Dr. Hon stated that the transfer was an interest-free loan of principal and that the zero-interest portion was a gift. Dr. Hon testified that he and his wife had made similar

arrangements with their two other grown children for the purchase of their homes. At the time, Stephanie was making $30,000 as a first-year resident and Walter was making $80,000. Dr. Hon testified that the principal would be paid down at a rate of $2,000 per month until such time when Stephanie and Walter could afford to pay more. The loan would be paid off in full if the couple were to move and sell the Property. Stephanie Hon's testimony corroborated her father's understanding of the transaction.

The closing occurred on May 4, 2019, the day after the third transfer was made. (D Ex. 1). Debtor wrote numerous checks at closing totaling $536,532.51, that were issued from a Navy Federal Credit Union account. (D Ex. 1). Thereafter, between August 25, 2016, and February 28, 2017, there were sixteen transfers from a Navy Federal Credit Union account Debtor controlled to a Bank of America account in the name of Michele and Stephanie Hon. Dr. Hon testified to receiving thirteen payments of $1,000 that were deposited into that account in partial repayment on the loan.

On April 7, 2017, Debtor and Stephanie separated, and a divorce proceeding was initiated in Tompkins County Family Court. (P Ex. C). The couple had a then two-year-old daughter. In a proceeding to determine custody and who would remain in the house, Attorney Thomas Cramer testified that he submitted on Stephanie's behalf an affidavit in which she stated: "I have been able to finally feel safe in my house … which my father generously purchased last year as a gift." When cross-examined on the statement, Attorney Cramer explained that most people would consider an interest-free loan in excess of a half a million dollars to be a very generous gift. In that proceeding, Debtor filed a reply affidavit in which he swore: "Petitioner's father did not purchase the house as a gift. Petitioner's father loaned us the money to purchase the house. Details of terms are included in text messages, attached hereto as Exhibit 'B.'" (P Ex. C pg. 2). Debtor attached the text

4

messages with Dr. Hon to evidence that the money transfers were a loan and not a gift. (P Ex. C). When cross-examined, Debtor tried to distance himself from his sworn affidavit, first by claiming the document was taken out of context, then by alleging his affidavit was written by his divorce attorney and not his own statement and lastly that the affidavit was in some way altered. Nonetheless, Debtor acknowledged his signature on the affidavit. Attorney Cramer testified, that although the lettered exhibits attached to the affidavit may have been switched, the affidavit itself is the same document filed of record with the Tompkins County Family Court.

On July 10, 2018, Stephanie executed a mortgage in favor of her parents in the amount of $560,000, encumbering her interest in the Property. On December 6th, 2018, Debtor petitioned for chapter 7 bankruptcy relief. In Debtor's chapter 7 bankruptcy schedules, he did not schedule a debt to Plaintiffs. On April 10, 2019, Plaintiffs filed a proof of claim for "monies loaned" to the Debtor in the amount of $282,812.64. The claim was later amended on August 13, 2019, listing the amount as $273,500.

Stephanie Hon testified that she and Michele-Domres Hon created a joint account through Bank of America to facilitate money transfers as a matter of convenience. Stephanie Hon admitted that she had a debit card to this account and had access to the funds, but that she never used the funds during the period in question.

Debtor testified that the transferred funds were a gift to himself and Stephanie Hon from Plaintiffs and not a loan. When questioned about the $1,000 payments to the Bank of America account held by Stephanie Hon and Michele Domres-Hon, Debtor stated that he had no knowledge that those payments were loan repayments and instead asserted that he was providing Stephanie Hon an allowance for her own expenses. Patrick Regan supported the testimony of his son by testifying that Stephanie Hon had referred to the transferred funds as a gift from her father.

**Applicable Law**

In order to bring an action in federal court, plaintiffs have the burden of proof to establish the requisite standing to proceed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In bankruptcy, creditors of the debtor have that standing. *In re Hemingway*, 39 B.R. 619, 621-22 (N.D.N.Y. 1983).

As to the determination of whether Plaintiffs are creditors who hold a valid claim against the Debtor, Debtor claims that Florida law controls. However, Debtor has not demonstrated how the application of Florida law would produce an outcome different from the application of New York law and, from the facts presented, the court finds that the outcome would be the same. Accordingly, the court will apply New York law, as the law of the forum state. *Haywin Textile Products, Inc. v. Int'l Fin. Inv. and Commerce Bank*, 152 F.Supp.2d 409, 412 (S.D.N.Y. 2001).

**Discussion**

Plaintiffs must show that they hold a valid, enforceable claim against Debtor in order to assert standing. A gift donor is not considered a creditor and would not have standing to bring an action objecting to a debtor's discharge. Plaintiffs, therefore, must show the offer of a loan, acceptance, consideration, mutual assent and an intent to be bound. *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (N.Y. App. Div. 2009).

In weighing the evidence, the court finds all of these elements present. Through Dr. Hon, Plaintiffs offered to make a loan of principal to Debtor and Stephanie Hon. Debtor and Stephanie Hon accepted and acknowledged the receipt of the funds which were then utilized for the purpose intended. There was consideration on both sides—from Plaintiffs in transferring the funds to Debtor and Stephanie Hon—and, from Debtor and Stephanie in the implied promise to repay the principal balance, which the court infers and is evidenced by the subsequent thirteen payments of $1,000

which commenced shortly thereafter. Debtor's attempt to distance himself from these payments is simply not credible. The court finds that Walter and Stephanie had an identity of purpose and action at the time they were purchasing their first house. The court does not accept that their individual thoughts on the nature of the transaction would so diverge at that point, with one considering it a gift and the other, a loan. Rather, the court finds mutual assent and that Plaintiffs made a valid, enforceable loan to Debtor and Stephanie Hon.

By his own characterization, Debtor swore before the New York State court that the transaction was a loan, and specifically cited the text messages as evidence of the loan from Plaintiffs. Debtor's affirmative statement that the transaction constituted a loan in the state court proceeding to serve his then interests, is given great weight by this court in this proceeding, even though it may not serve his current posture. Notwithstanding the current inconvenience for Debtor, Debtor's disavowal is not accepted by the court and will not be given credence.

Attorney Cramer verified the authenticity of the affidavit. It serves as strong evidence that Debtor intended the transaction to be a loan at the time it was made. The court similarly finds persuasive the text messages between Debtor and Dr. Hon. As discussed in the messages, Dr. Hon characterized the transaction as an interest-free loan. Dr. Hon and Debtor discussed the terms of the loan including repayment and had an ongoing conversation as Dr. Hon made multiple transfers to Debtor. From the testimony offered at the hearing, it is clear that Plaintiffs intended the transaction to be a loan and not a gift. When viewed with Debtor's affidavit, the inescapable conclusion is that both parties agreed that the transaction was a loan at the time the loan was made, and it is enforceable.[3]

---

[3] Plaintiff briefly addressed the statute of frauds, and the court agrees that New York law would not preclude enforcement. *See, e.g., Nickel v. Benton*, 92 F. Supp. 3d 38 (N.D.N.Y. 2015)

**Conclusion**

Plaintiffs have sufficiently demonstrated that they made a valid, enforceable loan to Debtor and, therefore, have the requisite standing to bring this discharge action. A further pre-trial conference in this adversary proceeding shall be held on December 12, 2019, at 2:30 P.M.

So Ordered.

Dated: November 15, 2019
Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge