UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Walter Joseph Regan,<br><br>                       Debtor. | Case No. 18-31694<br>Chapter 7 |
| Henry Hon and Michele Domres-Hon,<br><br>                       Plaintiffs,<br><br>v.<br><br>Walter Joseph Regan,<br><br>                       Debtor-Defendant. | Adv. Pro. No. 19-50006 |

## DECISION AND ORDER ALLOWING
## LIMITED TESTIMONY OF FORMER ATTORNEYS

Walter Joseph Regan ("Debtor") filed a chapter 7 bankruptcy case on December 6, 2018. Shortly thereafter, Plaintiffs commenced this Adversary Proceeding alleging, *inter alia,* that Debtor intentionally, knowingly and fraudulently made false statements and oaths to hinder the recovery of Plaintiffs' claim and the claim of Plaintiffs' daughter and Debtor's estranged wife, Stephanie Hon ("Ms. Hon").[1] Plaintiffs' complaint seeks an order denying Debtor a discharge pursuant to 11

---

[1] All references to "BK Doc. ___" refer to docket entries in Case No. 18-31694 (the "Main Case"), and all references to "AP Doc. ___" refer to docket entries in the instant adversary proceeding. The record consists of the Complaint (AP Doc. 1), Defendant's Answer to Complaint with Affirmative Defenses (AP Doc. 4), Memorandum Decision and Order dated November 15, 2019 (AP Doc. 25), Scheduling Order Prescribing Deadlines and Setting Trial (AP Doc. 153), Plaintiffs' Pre-Trial Statement (AP Doc.160), Text Order directing Plaintiffs to file a memorandum of law on the permissibility of the Former Attorneys' proposed testimony and permitting Debtor to file a response (AP Doc. 168), Transcript of Standing Hearing (AP Doc. 174), Plaintiffs' Memorandum of Law (AP Doc. 177), Debtor's Letter Dated December 16, 2022 (AP Doc. 180 and BK Doc. 209), Plaintiffs' counsel's letter and certificate of service advising of Debtor's incarceration (AP Docs. 181 and 182) and Stay Relief Order (BK Doc. 133). Additionally, the court takes judicial notice of Debtor's chapter 7 petition and schedules filed in the Main Case (BK Doc. 1) and assumes familiarity with all pleadings filed in the Main Case and this Adversary Proceeding.

U.S.C. §§ 727(a)(2)(A) or (B), (a)(3), (a)(4)(A), (B) and (C), and (a)(5).[2] In Defendant's Answer to Complaint with Affirmative Defenses, Debtor denies Plaintiffs are entitled to the relief requested.

At the outset, an evidentiary hearing was held to address Debtor's affirmative defense that Plaintiffs were not creditors and therefore lacked standing to bring this action (the "Standing Hearing"). Debtor asserted certain funds advanced from Plaintiffs to Debtor and Ms. Hon to purchase their former martial residence were a gift and not a loan, and therefore, Plaintiffs were not owed money and the Adversary Proceeding should be dismissed. During the Standing Hearing, Debtor testified under oath regarding his sworn affidavit dated April 19, 2017 filed in the Matrimonial Case[3] (the "Affidavit"), which stated in paragraph #7: "Petitioner's father did not purchase the house as a gift. Petitioner's father loaned us the money to purchase the house." Under direct questioning by his bankruptcy attorney and cross-examination by Plaintiffs' counsel, Debtor repeatedly referenced discussions with his former matrimonial attorneys, Emily Rockett, Esq., James Miller, Esq. and Anthony Elia, Esq. (collectively, the "Former Attorneys") where he allegedly requested correction of paragraph #7 to reflect the funds were a gift (the "Communications").[4] Subsequent to the Standing Hearing and submission of post-trial briefs, the

---

[2] Unless otherwise noted, all sectional references in this decision are to Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

[3] Walter J. Regan v. Stephanie Regan a/k/a/ Hon, Index No. 2017-0251, Tompkins County Supreme Court, Integrated Domestic Violence Part (the "Matrimonial Case").

[4] Debtor's testimony relating to the attorney-client communications with his Former Attorneys is reflected in the transcript of the Standing Hearing (AP Doc. 174) as follows:
- Page 140: lines 17-20 – The attorney was in a rush but stated that he would have to sign the Affidavit.
- Page 142: lines 6-10 – Debtor testified that he communicated to Ms. Rockett on whether the funds were a gift or a loan.
- Page 148: lines 13-15 – Debtor told Ms. Rockett that the funds were a gift.
- Page 149: lines 13-14 – Debtor told Ms. Rockett that the funds were a gift.
- Page 150: lines 18-19 – Debtor said the loan versus gift statement was a "major issue" – but was listening to his attorney.
- Page 152: line 16 – page 153: line 2 – Debtor testified he met with Emily Rockett, Anthony Elia and Jim Miller "the next day" and "told them – I brought in – you know, said what was going on here and explained – you know again, we explained that it was a gift. Anthony had stated that, well, we had thought that it would be better for your divorce. And their understanding was that's why these tactics were done. They already knew about Jonathan Orkin and everything that had transpired."

court concluded the funds given by Plaintiffs to Debtor and Ms. Hon were a loan and not a gift. *See* Memorandum Decision and Order dated November 15, 2019. Thus, Plaintiffs are creditors with the requisite standing to maintain the instant Adversary Proceeding.

After the conclusion of discovery and a series of appeals in this action and the Main Case,[5] the court issued a scheduling order establishing deadlines for witness and exhibit lists and setting a trial date. Plaintiffs filed, *inter alia*, Plaintiffs' Pre-Trial Statement that included a Summary of Witness Testimony, indicating their intention to call the Former Attorneys to testify that they did not "suborn the debtor's perjury in a family court proceeding with respect to an affidavit in which the debtor claimed that the $560,500 advance by the plaintiffs to the debtor and Stephanie Hon was a loan, not a gift." Pursuant to a Text Order, Plaintiffs were directed to file a memorandum of law on the permissibility of the Former Attorneys' proposed testimony, and Debtor was permitted to file a response. After submission of Plaintiffs' Memorandum of Law, the matter came before the court for decision.[6] For the reasons given on the record on November 28, 2022[7] and as further

---

[5] Debtor appealed five Bankruptcy Court orders to the District Court, including an order granting Ms. Hon relief from the automatic stay to conclude the Matrimonial Case (the "Stay Relief Order"). The District Court affirmed the Stay Relief Order and dismissed the other four appeals. *In re Regan*, Case Nos. 21-1231 (Lead), 21-1238, 21-1246, 21-1247, 22-0191, Doc. 43 (N.D.N.Y. Nov. 7, 2022). Debtor further appealed to the Second Circuit. Four of the appeals were dismissed and only the appeal of the Stay Relief Order remains pending before the Second Circuit. *In re Regan*, Case No. 22-3088 (2d Cir.). Notwithstanding the pending appeal, this court retains jurisdiction to consider and decide issues raised in the Adversary Proceeding. "[T]he filing of a notice of appeal only divests the [bankruptcy] court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 Bankr. LEXIS 2159, at * 12-13 (Bankr. S.D.N.Y. 2020). The Stay Relief Order only terminated the stay to permit Ms. Hon to finish the Matrimonial Case and is unrelated to the issues raised in this Adversary Proceeding. Accordingly, this court is not divested of jurisdiction and may proceed with this action.

[6] Debtor did not submit a response addressing the Former Attorneys' testimony. However, Debtor filed a letter in the Adversary Proceeding, the Bankruptcy Case, the appeals in the District Court and the Second Circuit reiterating his position that he needs court-appointed counsel to assist with the appeal before the Second Circuit due to his *in forma pauperis* status. *See* AP Doc. 180 and BK Doc. 209.

[7] At the pre-trial conference, Debtor repeated his requests for appointment of *pro bono* counsel and reiterated his position that continuing crimes and fraud are occurring in the Main Case, the Adversary Proceeding and the appeals. The request for counsel was denied for the same reasons set out in the District Court Text Order issued by Chief Judge Suddaby (Dist. Ct. Case No. 20-00846, Doc. 57) and denied on reconsideration by Chief Judge Suddaby (Dist. Ct. Case No. 20-00846, Doc. 60). The request for assignment of *pro bono* counsel was also denied by the Second Circuit. (Second Cir. Case No. 20-3444 (Lead), Doc. 118).

detailed below, the court concludes that Debtor waived his attorney-client privilege regarding the Communications with his Former Attorneys concerning paragraph #7 of the Affidavit and therefore limited testimony on that issue may be presented at trial.

### Jurisdiction and Venue

The court has jurisdiction to hear and decide this core proceeding pursuant to 28 U.S.C. §§1334(b), 157(a), (b)(1), and (b)(2)(J). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### Analysis

The Supreme Court recognizes "the attorney-client privilege under federal law, as the oldest of the privileges for confidential communications known to the common law." *United States v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (internal quotation marks and citation omitted). That privilege protects only against the disclosure of confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

Federal Rule of Evidence 501[8] entitled "Privilege in General" provides: "The common law – as interpreted by the United States courts in light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Accordingly, federal common law governs a claim of privilege when the substantive rights of the parties are governed by federal law, and state law controls when the claim or defense arises under state law. Fed. R. Evid. 501.

"In determining whether the attorney-client privilege applies, the first inquiry is whether to apply state or federal law. In cases under the Bankruptcy Code, the Federal Rules of Evidence apply." *Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC)*,

---

[8] Federal Rule of Evidence 501 is made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9017.

575 B.R. 29, 34-35 (Bankr. S.D.N.Y. 2017).  Here, Debtor voluntarily filed for relief under chapter 7 of the Bankruptcy Code.  Plaintiffs' claims involve the truthfulness of Debtor's bankruptcy petition disclosures, and thus, Debtor's entitlement of a discharge under Section 727.  With the Bankruptcy Code controlling, the substantive rights of the parties are governed by that federal statute so federal common law applies.  *See* Fed. R. Evid. 501; *In re Actos Antitrust Litig.*, 2022 U.S. Dist. LEXIS 171146, at *27 (S.D.N.Y. Sept. 16, 2022); *United States ex rel. Raffington v. Bon Secours Health Sys*, 2018 U.S. Dist. LEXIS 240998, at *2 (S.D.N.Y. Aug. 21, 2018); *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1022 (Bankr. S.D. Ga.1998) (holding the question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used).

*Waiver of Attorney-Client Privilege under Federal Law*

Federal common law privilege protects communication between lawyers and clients that are intended to be kept confidential regarding matters within the scope of the representation.  *United States ex rel. Raffington*, 2018 U.S. Dist. LEXIS 240998, at *2.  The client controls the privilege which may be asserted or waived.  *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888); *SEC v. Beacon Hill Asset Mgmt, LLC*, 231 F.R.D. 134, 142 (S.D.N.Y. 2004).  A waiver may be found where a party discloses communications with his attorney eliminating the confidential nature of the communication.  *United States v. Finazzo*, 2013 U.S. Dist. LEXIS 22479, at *17 (E.D.N.Y. Feb. 19, 2013).  "Courts have found waiver [of the attorney-client privilege] by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense."  *Pritchard v. County of Erie (In re County of Erie)*, 546 F.3d 222, 228 (2d Cir. 2008).  In the Second Circuit, the party asserting the privileged nature of the communication has the burden of proving that the privilege was not waived through

disclosure. *In re Allergan PLC Secs. Litig.*, 2021 U.S. Dist. LEXIS 171331, at *6 (S.D.N.Y. Sept. 9, 2021); *Finazzo*, 2013 U.S. Dist. LEXIS 22479, at *17; *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019).

Debtor has not objected to Plaintiffs' Witness List nor argued the Former Attorneys' testimony is prohibited because he did not waive his attorney-client privilege.[9] Nevertheless, due to Debtor's *pro se* status, the court analyzed whether Debtor's testimony about the Communications resulted in a waiver. As noted, Debtor testified while represented by bankruptcy counsel about his discussions with the Former Attorneys regarding alleged inaccuracies in paragraph #7 of the Affidavit and the legal advice Debtor received, including the strategy underlying the Affidavit's content. Further, Debtor testified that he relied on the Former Attorneys' advice. Consequently, while the Communications were initially protected by the attorney-client privilege, they lost those confidentiality protections when voluntarily disclosed by Debtor. As a result, the privilege was waived.[10]

*Waiver of Attorney-Client Privilege under State Law and the Interplay with New York Code of Professional Conduct*

Although the inquiry is properly resolved under federal law and may end here, Plaintiffs' Memorandum of Law also addressed Debtor's waiver of the attorney-client privilege under state law. Even assuming, *arguendo,* that New York law applies, that analysis leads to the same conclusion that the attorney-client privilege was waived as to the Communications.

---

[9] As previously noted, Plaintiffs filed a Memorandum of Law on the permissibility of the Former Attorneys' proposed testimony (AP Doc. 177) and Debtor failed to file a response.

[10] Plaintiffs' Memorandum of Law (AP Doc. 177) suggests that subject-matter waiver under Federal Rule of Evidence 502 would apply to this case and extend to undisclosed communication or information. *Fed. R. Evid.* 502(a)(1)-(3). Subject matter waiver prevents prejudice to a party and avoids potentially misleading evidence from being presented that otherwise would result in a distorted judicial proceeding. Determination of subject-matter waiver "rests on fairness considerations" in allowing access to all privileged conversations in instances where the privileged information is used as a sword and a shield resulting in prejudice to the non-disclosing party. *In re Von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987). Plaintiffs have not demonstrated such circumstances exist in this case. Evidence regarding undisclosed communications or information will not be permitted.

New York Civil Practice Law and Rules ("CPLR") 4503 codifies the attorney-client privilege, providing in relevant part:

> **Unless the client waives the privilege**, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, **shall not disclose, or be allowed to disclose such communication,** nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing….

CPLR § 4503(a)(1) (emphasis added); *People v Belge*, 59 A.D.2d 307, 309, 399 N.Y.S. 2d 539, 540 (4th Dept. 1977). The confidentiality protections extend to a lawyer's former clients. Indeed, "[t]he obligation to hold a client's confidences inviolate expressly continues after the representation has terminated." *Gen. Realty Assocs. v Walters*, 136 Misc. 2d 1027, 1028-1029 (Civ. Ct. N.Y. Co. 1987).

Like federal common law, New York courts hold where a "client voluntarily testifies to a privileged matter, who publicly discloses such matter, or who permits his attorney to testify regarding the matter is deemed to have impliedly waived the attorney-client privilege." *Jakobleff v Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 835 (2d Dept. 1983) (citations omitted). Where a witness only testifies that they sought and/or received the advice of counsel in connection with its decision on an issue (but no further testimony is given) the witness does not waive the attorney-client privilege; however, where the witness testifies about the *content* of the advice or that *an action was taken on the advice of counsel,* the attorney-client privilege is waived. *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 2009 U.S. Dist. LEXIS 89183, at *45-46 (S.D.N.Y. Sept. 28, 2009). "[T]he burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." *Parneros v Barnes & Noble, Inc.*, 332 F.R.D. 482, 491

7

(S.D.N.Y. 2019) (*citing Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379, 581 N.E.2d 1055, 575 N.Y.S.2d 809 (1991)).

Here, Debtor voluntarily testified regarding the content of discussions and action taken on the advice of the Former Attorneys about alleged inaccuracies in paragraph #7 of the Affidavit. Accordingly, he waived the attorney-client privilege under state law as well.

In addition to the privilege established under statutory and common law, the New York Code of Professional Conduct addresses the confidentiality of attorney-client communications in its ethical standards that guide attorneys' professional conduct.[11] Rule 1.6, "Confidentiality of Information," provides, *inter alia*:

> (a) A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person, unless:
> *(1)* the client gives informed consent, as defined in Rule 1.0(j);[12]
> * * *
> "Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential.

22 N.Y.C.R.R. § 1200.0, Rule 1.6.

By Debtor disclosing the content of conversations with the Former Attorneys on the witness stand, those discussions were no longer confidential and therefore lost protection under the attorney-client privilege. However, the court recognizes "the right to part the curtain of confidentiality must be sparingly applied. It extends only to the bare minimum 'necessary to accomplish [its] purpose.'" *Gen. Realty Assocs.*, 136 Misc. 2d at 1028-1029 (*quoting* Op.

---

[11] Although disciplinary rules and rules of professional responsibility are not statutorily mandated, "federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar." *United States v. Hammad*, 858 F.2d 834, 837 (2d Cir. 1988); *see In re Menton*, 2011 Bankr. LEXIS 1975, at *11 (Bankr. N.D.N.Y. May 24, 2011); Northern District of New York Local Rule, 83.3.

[12] "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives.

Professional Ethics Comm of NY City Bar Assn No. 79-63). The Former Attorneys' testimony will therefore be strictly limited to the very specific attorney-client Communications, consistent with the ethical rules governing attorney testimony, especially since consent of the Debtor was not obtained.[13]

## Conclusion

In determining the Communications are no longer confidential and Debtor has waived his attorney-client privilege, the court will permit the Former Attorneys to testify at trial. Such testimony shall only address the Communications with Debtor about paragraph #7 of the Affidavit as referenced in the transcript of the Standing Hearing.

Based on the foregoing, it is hereby

ORDERED that the telephonic pre-trial conference to discuss a further postponement of the trial is adjourned from **February 16, 2023, at 2:00 p.m**. to March 9, 2023, at 2:00 p.m. Counsel for Plaintiffs is directed to appear, and Debtor shall also appear to the extent he is able,[14] by calling (888) 398-2342 and using access code 3187406#; and is further

ORDERED, that the Clerk is directed to serve a copy of this Order on Debtor by mail.

Dated: February 1, 2023
Syracuse, New York

*Wendy A. Kinsella*
_____
Wendy A. Kinsella
United States Bankruptcy Judge

---

[13] At the pre-trial conference, this court noted the Former Attorneys did not seek a protective order to avoid or, at a minimum, limit their testimony as required by New York Rule of Professional Conduct 1.6.

[14] Pursuant to Plaintiffs' counsel's letter and certificate of service (AP Docs. 181 and 182), Debtor is serving a one-year prison sentence in Tompkins County Jail. The trial in this action will therefore be postponed to a date after Debtor has been released.